UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:16-CV-00043-LLK

ANTHONY HENDERSON                                                                    PLAINTIFF

v.

CAROLYN COLVIN, Commissioner of Social Security                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits.  The fact and law summaries of Plaintiff and Defendant are at Dockets 15 and 20.  The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals.  Docket 14.

Because the administrative law judge's (ALJ's) decision does not comport with applicable legal standards, the Court will REMAND this matter to the Commissioner for a new decision. Specifically, the ALJ should evaluate / re-evaluate the prior administrative finding that Plaintiff's anxiety disorder requires that he have no more than occasional contact with the public and should consider the examining neurologist's opinion that Plaintiff experiences episodes of altered consciousness that would be expected to result in routine absences from work four or more days per month.

### Drummond v. Commissioner

In Drummond v. Commissioner, 126 F.3d 837, 842 (6th Cir.1997), the Sixth Circuit established that "the principles of res judicata can be applied against the Commissioner." Accordingly, "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed

circumstances."  Id.  Drummond applied res judicata to a prior administrative finding with respect to Drummond's residual functional capacity (RFC).  "Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the [RFC] findings of a previous ALJ."  Id.

In light of Drummond, the Social Security Administration issued an Acquiescence Ruling, which directs that, for cases arising within the Sixth Circuit, adjudicators must follow Drummond and adopt the prior RFC "unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations, or rulings affecting the finding or the method for arriving at the finding."  Social Security Acquiescence Ruling 98-4(6), 1998 WL 283902.

### The ALJ's consideration of the prior RFC did not comport with Drummond

Plaintiff suffers from a seizure disorder of unknown etiology.  Administrative Record (AR), p. 510.  He "feels high anxiety" before a seizure, becomes very stiff and rigid with myoclonic convulsive jerking movements (AR, p. 326) and "jaws locking up" (AR, p. 552) and experiences either loss of or altered consciousness (AR, pp. 326 and 552).

Plaintiff contends that the ALJ erred in failing to adopt the prior ALJ's RFC finding.

The prior decision found that Plaintiff suffers from a seizure disorder, an anxiety disorder, and alcohol dependence in reported remission.  AR, p. 64.  The seizure disorder was found to limit Plaintiff to medium work "except he should never climb ladders, ropes, or scaffolds; may only occasionally crouch; should avoid hazards including moving mechanical parts and unprotected heights."  AR, p. 66.  The anxiety disorder required that Plaintiff "have no more than occasional contact with the public."  Id.  Plaintiff was found to be not disabled because he retains the ability to return to his past relevant work as a grill cook and silk tree/plant assembler.  AR, p. 72.

The current ALJ acknowledged the prior finding of a vocationally-significant anxiety disorder but found Plaintiff suffers only from a seizure disorder and residuals of hernia surgery. ALJ's decision at AR, p. 11.  The ALJ found that Plaintiff is limited to light work and "can have no

2

work at unprotected heights, around dangerous moving machinery, open flames, or bodies of water."  AR, p. 14.  Although Plaintiff cannot perform his past relevant work, he was found to be not disabled because he can perform a significant number of jobs in the national economy.  AR, p. 17.[1]

In connection with Plaintiff's second claim for benefits, psychologist Jane Brake, Ph.D., opined that there was no clinical basis for finding medical improvement of Plaintiff's anxiety disorder from the time of the prior decision:

> The finding of the [Plaintiff's] MRFC (mental residual functional capacity) in the [prior] ALJ decision … is adopted in the absence of new and material evidence to indicate otherwise.  Capacities … are those specified in the [prior] ALJ decision.  The ALJ found that [Plaintiff] has the capacity for task completion in settings that limit contact with the general public.                              (AR, p. 90).

Christi Bruening, Ph.D., concurred with the above opinion of Dr. Brake.  AR, p. 108.

The ALJ rejected the opinions of Drs. Brake and Bruening that Plaintiff's anxiety disorder requires only occasional contact with the public because those opinions are allegedly "contradicted" (AR, p. 13) by the fact that:

1.  Plaintiff's Four Rivers Behavioral Health treatment notes indicate that he was "polite, smiling, and pleasant."  ALJ's decision at AR, p. 13 referring to notes at AR, pp. 422 and 457.

2.  There is a "lack of panic attacks depicted in the record."

3.  Plaintiff "spends time with his girlfriend, goes to Bible study, and spends time with a friend."

---

[1] The ALJ's decision cited the jobs of hand packager and stock worker as representative examples.  AR, p. 17.  The vocational expert (VE) testified that the hand packager job is listed in the Dictionary of Occupational Titles (DOT) at section 753.687–038, 1991 WL 680354, and the stock worker job is at section 209.587-034, 1991 WL 671802.  AR, p. 53.  Neither the VE's testimony nor the DOT descriptions indicate that these jobs are typically performed with no more than occasional contact with the public.  Therefore, any erroneous failure to find a need for no more than occasional contact with the public due to an anxiety disorder was not harmless.

These reasons cited by the ALJ fall short of satisfying the ALJ's burden of showing the presence of a medical improvement or changed circumstances warranting rejection of the prior administrative finding of a vocationally-significant anxiety disorder.[2]

### The ALJ erred in not evaluating the neurologist's disabling medical opinion
### As required by 20 C.F.R. 404.1527(c).

In August 2014, neurologist John Grubbs, M.D., evaluated Plaintiff's seizure disorder.  AR, p. 552.  In September 2014, Dr. Grubbs completed a physical capacities form, finding, among other things, that Plaintiff's seizure disorder would be medically expected to result in routine absences from work four or more days per month due to "episodes of altered consciousness."  AR, p. 551. This is significant because the VE testified that absences of two or more days per month on an ongoing basis are intolerable to most employers.   AR, p. 55.

While the ALJ rejected Dr. Grubbs' findings with respect to Plaintiff's abilities to sit, stand, and walk due to lack of supporting objective medical evidence (AR, p. 16), the decision did not evaluate Dr. Grubbs' finding that episodes of altered consciousness would be expected to result in excessive absenteeism.   This did not comport with 20 C.F.R. 404.1527(c), which states that

---

[2] Plaintiff persuasively argues as follows:

"[The] ALJ, understandably, interprets ["Bible study"] as the common definition of a formal Bible study, as part of a church function.  The plaintiff's definition of Bible study is merely reading his Bible, first thing in the morning.  The plaintiff's mother's third party function report gives a slightly clearer description.  She lists reading from a Bible and prayer book as a part of a short list of his daily activities (Exhibit B7E)."  (Plaintiff's fact and law summary, Docket 15, p. 3).

"To give weight to minor notes such as these [in which Plaintiff was observed smiling] is highly misleading, especially when they are culled from overall negative medical reports that state the need for continued treatment (Exhibit B12F).  TR 405-427.  If the plaintiff had not been cooperative during treatment, would that not be evidence of noncompliance with prescribed treatment, especially during mental health treatment, and duly noted."            (p. 5).

"It should go without saying that having two interpersonal relationships [with a girlfriend and a friend], where interaction takes place in private residence, is different from contact with the public.  Having a friend, a girlfriend, and cooperating with mental health treatment is not enough evidence to supplant the medical opinion of two state agency physicians."      (p. 6).

"[r]egardless of its source, we [the Social Security Administration] will evaluate every medical opinion we receive."[3]

**Plaintiff's seizure disorder does not satisfy the Listing.**

Plaintiff is entitled to a conclusive presumption of disability if he shows that he suffers from a seizure disorder satisfying the clinical criteria of an impairment listed in Appendix 1 of the regulations.

Disability is found under Listing 11.02 when there is evidence of:

Major motor seizures (grand mal or psychomotor), documented by EEG and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month, in spite of at least 3 months of prescribed treatment. With

A. Daytime episodes (loss of consciousness and convulsive seizures) or

B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

Disability is found under Listing 11.03 when there is evidence of:

Minor motor seizures (petit mal, psychomotor, or focal, documented by EEG and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

The ALJ found that Plaintiff's seizure disorder does not satisfy Listing 11.02 because he "does not have seizures occurring at least once a month in spite of three months treatment." ALJ's decision at AR, p. 13. Listing 11.03 is unsatisfied because he "does not have seizures occurring more frequently than once weekly in spite of at least three months of prescribed treatment." Id. Additionally, both Listings require that the seizure disorder be "documented by EEG

---

[3] Admittedly, the ALJ discounted Plaintiff's testimony of two seizures per month with residual effects for two to three days because, when Plaintiff completed the epilepsy questionnaire, he indicated that he had seizures every two to three months. ALJ's decision at AR, p. 14 referring to questionnaire at AR, p. 215. Episodes of altered consciousness are not the same thing as seizures.

[electroencephalogram]," and the ALJ found that "both EEGs in the record were normal."  AR, p. 15

referring to EEGs at AR, pp. 518 and 538.

Substantial evidence supported the ALJ's finding that Plaintiff's seizure disorder does not satisfy

the Listing.

### Order

Because the Commissioner's final decision does not comport with applicable legal

standards, this matter will be REMANDED to the Commissioner for a new decision and any further

administrative proceedings deemed necessary and appropriate by the Commissioner.[4]

---

[4] While the Court declines to impose specific remand requirements, the Commissioner may consider the possibility of evaluation / re-evaluation of the prior administrative finding that Plaintiff's anxiety disorder requires that he have no more than occasional contact with the public and the examining neurologist's opinion that Plaintiff experiences episodes of altered consciousness that would be expected to result in routine absences from work four or more days per month.